PEDRO LÓPEZ SURITA ET AL., Plaintiffs and Appellees, *v.* PUERTO RICO WATER RESOURCES AUTHORITY ET AL., Defendants and Appellants.

Nos. R-65-25   Decided June 10, 1966.
R-65-29.

*José Antonio Arabía* and *Carlos M. Díaz Lamoutte* for the Water Resources Authority. *Frank Vizcarrondo Vivas* for appellees. *J. B. Fernández Badillo, Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for the Commonwealth of Puerto Rico.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Hernández Matos, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE RIGAU delivered the opinion of the Court.

On July 3, 1963 Aníbal Ruiz López, a boy twelve years and eight months old, was drowned inside a concrete pipe which is at the end of a water canal, which—canal and pipe —are part of the irrigation system operated by the Water Resources Authority in the Lajas Valley.

Aníbal lived near the canal, in the ward of Lajas Arriba in the municipality of Lajas. He used to go to play at the house of a boy, relative of his, named Ramón Enrique Suárez. Suárez' house is situated about sixty feet from said water canal. Although the canal had a pole—and—barbed-wire fence along its sides, there was a stretch, precisely the one adjoining the yard of Suárez' house, which did not have a fence. That is, between the yard of Suárez' house and the canal there was no fence on that side. (This can be clearly seen in the photograph which is defendant's Exhibit 1. It also appears from the oral evidence.)

The canal is uncovered and it has concrete bottom and side walls. The water runs in an east-west direction at about 70 meters from Suárez' house and on the western side thereof the canal comes to an end in the aforesaid concrete pipe, called a siphon. There the water current runs underground.

The trial court estimated that the speed of the water flow in the canal stretch right before entering the siphon is such that it would have taken only 14 seconds to carry the boy from the place he fell to the opening of the siphon. There the water drove the boy into the pipe, where he drowned.

The inspection showed that in the mouth of the pipe there remained two vertical iron rods embedded in the cement. There were also several vertical marks or grooves. At the time of the inspection witness Octavio Seda, Superintendent Engineer of Lajas Valley Irrigation System stated that "This is where the iron rods were embedded when the siphon was installed." If all the iron rods had been in the proper place they would have prevented a big bundle, like the body of the deceased, from being carried into the siphon.

In the findings of fact the trial court states that about three months before the accident the employees of the Water Resources Authority had removed the missing iron rods to prevent the accumulation of rubbish which would obstruct the siphon. About two months after the accident the Authority replaced said rods. The trial court decided that had said iron rods been crossing the opening of the siphon on the day of the accident minor Aníbal Ruiz López would not have lost his life. The trial court continues stating that upon falling into the canal the boy suffered no serious injury to cause him to lose consciousness, since the only injury found on him was a slight superficial abrasion on his cheek, which could have been produced inside the siphon. The autopsy revealed that the boy's death was caused by drowning. The court states that the medical expert evidence introduced by plaintiffs was to the effect the boy would not have drowned in the lapse of the 14 seconds it took the current to carry him to the opening of the siphon. The youngster, Ramón Enrique Suárez, who was 18 years old at the time of the accident, and who ran toward the siphon when he saw Aníbal fall into the canal, reached the opening of the siphon four or five seconds after the water pressure had carried Aníbal into the pipe. The court held that had the iron rods been in the proper place the youngster, Ramón E. Suárez, could have pulled Aníbal out of the canal without any serious consequences. The canal

was barely two feet deep and contained less than one foot of water.

As a result of the accident the Water Resources Authority was sued by Pedro López Surita, maternal grandfather and foster father of the deceased; by Adela Suárez, the minor's foster mother; by Dominga López, mother, and Jesús Ruiz, father of the deceased. Plaintiffs claimed compensation amounting to $70,000.

The trial court, after deciding that the minor, who fell into the canal in trying to jump over the same, incurred 20% negligence and defendant 80%, and estimating the damages suffered by each plaintiff for sufferings, loss of his company and affection, and loss of the right to future support, ordered defendant to pay to Dominga López, the minor's mother, $9,600; to Pedro López Surita, grandfather and foster father, $8,000; to Adela Suárez, foster mother, $6,400 and to Jesús Ruiz, father, $5,600. It also ordered defendant to pay $2,500 for attorney's fees.

In its judgment the court ordered the Water Resources Authority and the Commonwealth of Puerto Rico to pay defendant said sums solidarily. The joining of the Commonwealth was due to the fact that when calling the case for trial the Water Resources Authority's attorney raised the question that the person in interest was the Commonwealth, and he based his contention on the fact that the law which created the Lajas Valley Irrigation System provides that the Commonwealth is bound to reimburse the Water Resources Authority all expenses incurred by the Authority in the operation of the system.

Appeal from the judgment of the Superior Court was taken before us by the Water Resources Authority (Petition R-65-25), the Commonwealth (Petition R-65-29), and plaintiffs. (Petition R-65-7.)

Plaintiffs requested the elimination of the finding of the trial court that the deceased minor was guilty of contributory

negligence. On February 25, 1965 plaintiffs' petition was denied. We joined the two other petitions by our order of November 17, 1965 and we are deciding them in this opinion.

To support their contention defendants cite the case of *Vargas* v. *Water Resources Authority*, 86 P.R.R. 99 (1962). Said case is distinguishable from the present one. That one dealt with a wide canal and its "appearance is that of a flowing river." The minor was drowned in said canal and adhering to the case law cited in said case, the court relieved defendant from liability. There it was decided that as a general rule artificial bodies of water that have the same characteristics as natural bodies of water have been treated alike. This case presents a different situation. The immediate cause of Anibal's death was not his fall into a body of water which was less than one foot deep, but his drowning inside the siphon into which he was carried by the current.

■ We agree with the trial court in the sense that if the iron rods originally embedded at the opening of the siphon had been there the minor would not have been carried by the current into the pipe and would not have drowned. Plaintiff's Exhibit 13, a pamphlet entitled "Canal Safety, Safety in the Operation of Canals and Other Waterways Structures," 1958 ed., published by the Department of Interior of the United States, contains a series of explanations and photographs showing how the openings of these siphons or pipes, which it is often necessary to install at the end of these irrigation canals, may be provided with safety devices to prevent persons and animals from being carried by the current into these siphons. These safety devices may consist of rods or bars, cables, screens, metal tubes, platforms with steps to permit persons and animals to climb up and at the same time let the water pass between said platforms, etc. Engineer Octavio Seda, Superintendent of the Lajas Valley Irrigation District, testified that "in the Lajas Valley there

are only four or five siphons where (the water) has great speed before entering the siphon, the type involved in this case."

It is evident that to protect by means of iron rods four or five cement pipes approximately two or three feet in diameter is no economic burden of such nature to offset the usefulness that the irrigation system has for the area of Lajas Valley, which usefulness we acknowledged in *Vargas* v. *Water Resources Authority, supra,* and do so here again.

■ In the light of the facts of this case we reach the conclusion that we must affirm the judgment of the Superior Court, but it is necessary to modify it. The judgment orders the Water Resources Authority and the Commonwealth to pay solidarily the compensation awarded. We hereby modify the judgment in the sense that defendant Water Resources Authority will pay said compensation and the Commonwealth will be relieved from liability. The Authority operates and administers the Lajas Valley Irrigation System and pursuant to the law "all costs and expenses incurred by the Authority . . . shall be paid by it directly." 22 L.P.R.A. § 382. The Authority is a public corporation with standing to sue and be sued. It is liable for the direct payment of the compensation to plaintiffs in this case. There is no other reason for further changes in the judgment of the Superior Court.

For the reasons stated above the judgment of the Superior Court, Mayagüez Part, of December 11, 1964 in this case, will be modified, and as modified, affirmed.